**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KEITH SANTANGELO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **15-cv-0293** |
| | ) | |
| **v.** | ) | **Judge John Z. Lee** |
| | ) | |
| **COMCAST CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Keith Santangelo ("Santangelo") has filed this suit on behalf of himself and a putative class, alleging that Defendant Comcast Corporation ("Comcast") conducted an unauthorized credit check that caused a drop in his credit score in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). Santangelo also brings class action claims for breach of contract and unjust enrichment. Comcast has moved to dismiss Santangelo's Complaint, arguing that Santangelo lacks Article III standing and that he has failed to state claims under FCRA or for breach of contract or unjust enrichment. For the reasons provided herein, the Court grants Comcast's motion insofar as it seeks dismissal of the FCRA claim and declines to exercise supplemental jurisdiction over the remaining state law claims.

**I. Factual Background[1]**

On December 3, 2014, Santangelo contacted Comcast via Comcast's online customer service "chat" function in order to establish internet service in his apartment. *See* Compl. ¶ 8. During Santangelo's online chat session, the Comcast representative informed Santangelo of the need to run a credit report to establish internet service for Santangelo. *See id.* 9. Santangelo

---

[1] When reviewing a defendant's motion to dismiss, the Court assumes the alleged facts in the complaint are true and draws all possible inferences in a plaintiff's favor. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

asked if any option was available that would not involve running a credit report, and the Comcast representative informed Santangelo that, in lieu of the credit report, Santangelo could pay a $50.00 deposit. *See id.* ¶¶ 10–11. Santangelo chose this option and paid the $50.00 to obtain internet service without having a credit report run. *See id.* ¶ 12.

To facilitate payment, the Comcast representative created a web portal over which Santangelo provided Comcast his credit card information in order to remit the $50.00 deposit. *See id.* ¶ 13. However, despite Santangelo paying the $50.00 deposit, Comcast ran a credit report anyway on or around that same day, December 3, 2014. *See id.* ¶ 14. Santangelo never authorized Comcast to perform this credit report. *See id.* ¶ 15. In fact, Santangelo maintains that he expressly refused to authorize Comcast to run his credit report. *See id.*

According to Plaintiff, Comcast did not single out Santangelo in this regard but rather has done the same thing to numerous other consumers. *See id.* ¶¶ 16–17 (citing Comcast help forum topic threads). Santangelo contends that he and other members of the putative class have been harmed by Comcast's action in that Comcast obtained their personal and private financial information without authorization and received $50.00 from each putative class member in exchange for its promise not to request such records (which it subsequently ignored). *See id.* ¶ 21. Santangelo also contends his FICO score dropped as a result of the impermissible running of his credit report. *See id.* ¶ 37.

## II. Legal Standards

### A.      Rule 12(b)(1)

A motion to dismiss pursuant to Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint. "When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court must accept as true all well-pleaded

factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). But "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993) (quoting *Grafon Corp. v. Hausermann,* 602 F.2d 781, 783 (7th Cir. 1979)). "[I]f the complaint is formally sufficient but the contention is that there is in fact no subject matter jurisdiction, the movant may use affidavits and other material to support the motion." *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 848 (7th Cir. 2012). "The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." *Id.*

### B.      Rule 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in the complaint must at least "raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555. The Court must accept as true all well-pleaded allegations in the complaint and draw all possible inferences in the plaintiff's favor. *See Tamayo*, 526 F.3d at 1081. Mere legal conclusions, however, "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

### III. Analysis

### A.      Injury-in-Fact

Comcast first argues that Santangelo lacks standing because he fails to allege an injury-in-fact and has only alleged an injury-in-law. Under Article III, a plaintiff must allege an injury-in-fact, that is, "an invasion of a legally protected interest which is (a) concrete and particularized . . . . and (b) actual or imminent, not 'conjectural' or 'hypothetical[.]'" *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted). "To satisfy the injury-in-fact requirement, [a plaintiff] must establish that [they] ha[ve] sustained or [are] immediately in danger of sustaining some direct injury." *Wisconsin Right to Life, Inc. v. Schober*, 366 F.3d 485, 489 (7th Cir. 2004) (internal quotations omitted). Although "[m]ere speculation is not enough to establish an injury in fact," *id.*, "[a] motion to dismiss for lack of standing should not be granted unless there are no set of facts consistent with the complaint's allegations that could establish standing." *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 498 (7th Cir. 2005).

Comcast argues that: (1) the credit check that reduced Santangelo's credit score does not constitute an injury-in-fact because a reduced credit score alone does not constitute an injury-in-fact; (2) an alleged entitlement to statutory damages is merely an injury-in-law and not an injury-in-fact; and (3) the alleged monetary injury from the loss of a $50.00 refundable deposit does not constitute an injury-in-fact. *See* Def.'s Mot. Dismiss 4–6.

The loss of the $50.00 deposit is enough to satisfy Article III standing at the pleading stage. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lac Du Flambeau Band*, 422 F.3d at 496 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. at 561 (internal quotations omitted)). Santangelo's loss of the $50.00 is both "concrete" and "particularized" and affects Santangelo in a personal and individual manner. Loss of money, including loss of a deposit, is an economic harm generally sufficient for standing. *See, e.g.*, *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183–84 (2000) (economic harm is among the bases for injury-in-fact).

For its part, Comcast argues that Santangelo has not suffered an injury-in-fact because the

$50.00 deposit was fully refundable, citing to a Residential Services Agreement.[2]  *See* Def.'s

Reply 5–6.  But even if the $50.00 deposit were fully refundable, Santangelo still has standing

based on the lost time-value of the money.  *See Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d

453, 457 (7th Cir. 2010) (noting that "[e]very day that a sum of money is wrongfully withheld,

its rightful owner loses the time-value of the money" and holding that this was enough to confer

standing).

Comcast further argues that Santangelo lacks standing because he never requested a

refund.  *See* Def.'s Reply 6.  This, again, misses the point.  Santangelo alleges that he was denied

the use of that $50.00 because he paid it to Comcast in exchange for its promise not to pull his

credit.  *See* Compl. ¶¶ 13–14.  Construing the Complaint in his favor, Santangelo's theory is that,

if he had known that Comcast would seek his credit report despite its promise not to do so, he

would not have given $50.00 to Comcast in the first place, but would have used the money for

other purposes.  This is sufficient to establish an injury-in-fact, and Comcast's motion to dismiss

under Rule 12(b)(1) is denied.[3]

### B.    Failure to State a Claim

Comcast also moves to dismiss under Rule 12(b)(6) for failure to state a claim.  Comcast

argues that Santangelo fails to allege sufficient facts to establish a FCRA violation or a breach of

---

[2]    Santangelo points out that the Residential Services Agreement was not attached to his Complaint or otherwise referenced in his Complaint and thus should not be considered by the Court.  See Pl.'s Mem. Opp'n 5 n.5.  Here, the Court has the discretion to consider the Residential Services Agreement when deciding Comcast's Rule 12(b)(1) motion and concludes that, even under the terms of that agreement, Santangelo would still have suffered an injury-in-fact because he was duped (at least, according to him) into giving Comcast his $50.00. *See Alicea-Hernandez v. Catholic Bishop of Chic.*, 320 F.3d 698, 701 (7th Cir. 2003) ("The court may look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.").

[3]    Because Santangelo's payment of $50.00 is sufficient to confer standing under Article III, the Court need not address Comcast's remaining objections to standing.

contract claim and cannot bring an unjust enrichment claim when he alleges that a contract governs this dispute. The Court addresses the FCRA arguments below before turning to examine its jurisdiction over the state law claims.

### 1.  Count I (FCRA)

Comcast moves to dismiss Santangelo's claim under FCRA, arguing that Santangelo fails to allege facts comprising a violation of 15 U.S.C. § 1681(b)(f). Alternatively, Comcast contends that, even if Santangelo had done so, his claim still fails because there are no allegations of actual damages or willful conduct by Comcast.

Turning to the first argument, Comcast believes that Santangelo has not alleged that Comcast lacked a legitimate business purpose when it obtained his credit report and thus fails to state a FCRA claim. Under FCRA, "[a] consumer reporting agency must have a permissible purpose when it furnishes a consumer report." *Smith v. Encore Capital Grp. Inc.*, 966 F. Supp. 2d 817, 823 (E.D. Wis. 2013). This requirements stems from the statutory language of 15 U.S.C. § 1681b(f), which states that "[a] person shall not use or obtain a consumer report for any purpose unless . . . the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section." 15 U.S.C. § 1681b(f)(1)(a). Here, Comcast relies upon 15 U.S.C. § 1681b(a)(3)(F)(i) to argue that it's actions were permissible under FCRA because it had a "legitimate business need for the information . . . in connection with a business transaction that [was] initiated" by Santangelo.

Even a cursory review of the limited allegations in the Complaint reveals that, by requesting monthly internet service, Santangelo initiated a business transaction with Comcast within the meaning of 15 U.S.C. § 1681b(a)(3)(F)(ii). *See Pappas v. City of Calumet City*, 9 F. Supp. 2d 943, 949 (N.D. Ill. 1998) ("Generally speaking, a 'business transaction' under the

FCRA refers to an exchange of goods or service for money."). *See also Stergiopoulos & Ivelisse Castro v. First Midwest Bancorp, Inc.*, 427 F.3d 1043, 1047 (7th Cir. 2005) (holding that "FCRA requires only one permissible purpose"); *Minter v. AAA Cook Cnty. Consolidation, Inc.*, No. 02 C 8698, 2004 WL 1630781, at *4 (N.D. Ill. July 19, 2004) ("In determining whether a consumer report was obtained for a permissible purpose § 1681b(a)(3)(F) should be broadly construed."). As a result, he has failed to state a claim under 15 U.S.C. § 1681b(f).[4]

Not to be deterred, Santangelo advances two arguments to rebut Comcast's contention that its conduct is insulated by Section 1681(a)(3)(F)(ii). First, Santangelo argues that the oral agreement with Comcast, whereby Comcast agreed not to pull his credit report in return for a payment of $50.00, renders its request legally impermissible. But this argument conflates a permissible purpose as defined under FCRA with Santangelo's breach of contract claim. Under FCRA, a business does not require the consent of the potential customer (whether by contract or otherwise), so long as it has a statutorily defined "permissible purpose." Indeed, courts have held a business may obtain a credit report even over the explicit objections of a consumer. *See Newlin v. Comcast Cable of Ind., Inc.*, No. 2:12-CV-430-TLS, 2014 WL 1207513, at *3 (N.D. Ind. Mar. 24, 2014) ("Plaintiff's objection to Comcast obtaining his credit report, standing alone, would not suffice to overcome a legitimate business need."); *Washington v. S. Shore Bank*, No. 02 C 7403, 2004 WL 2038425, at *6 (N.D. Ill. Aug. 27, 2004) (a consumer's permission is not

---

[4] In his memorandum in opposition to the motion, Santangelo relies upon several other sections of FCRA that he has not pleaded in his Complaint to argue that Comcast obtained his report "under false pretenses." *See* Pl.'s Mem. Opp'n 11 (citing 15 U.S.C. § 1681q, 15 U.S.C. § 1681n(a)(1)(B), and 15 U.S.C. § 1681n(b)). But it is well-established that a "complaint cannot be amended by the briefs filed by the plaintiff in opposition to a motion to dismiss." *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). And the Court declines to consider them for the purposes of this motion..

needed "because one can obtain a credit report without the consumer's permission as long as the credit report is obtained for permissible purpose under the FCRA.").[5]

Second, Santangelo argues that Comcast's internal policy documents demonstrate that it lacked a "permissible purpose" under Section 1681(a)(3)(F)(ii). Although not entirely clear from his memorandum, Santangelo appears to argue that these internal policy documents indicate that Comcast itself believed that it had no "legitimate business need" for a customer's credit information where the customer is willing and able to provide Comcast with a payment of $50.00 in exchange for a promise not to seek the information. *See* Pl.'s Mem. Opp'n 9. Under such a theory, Santangelo's alleged agreement with Comcast would not establish a FCRA violation in and of itself, but may be probative of Comcast's own assessment that it did not need the credit information in such circumstances. For present purposes, the Court need not decide whether such allegations would sufficiently state a FCRA claim, because the internal policy documents were neither referenced in Santangelo's Complaint nor attached to it, thereby precluding Santangleo from relying upon them to survive the motion, and the current allegations fall far short of asserting such a claim. *Accord Santana v. Cook Cnty. Bd. of Review*, 679 F.3d 614, 619

---

[5]    Santangelo correctly points out that the Federal Trade Commission ("FTC") commentary, upon which many of these cases rely, 16 C.F.R. Ch. 1 Pt. 600, Appendix, § 604.2, has been rescinded. *See* 76 Fed. Reg. 44462, 44463 (July 26, 2011). But this rescission notice occurred because of new legislation lodging enforcement of FCRA with the Consumer Financial Protection Bureau ("CFPB"). *See id.* ("Recent legislation transferred authority to issue interpretive guidance under the FCRA to the Consumer Financial Protection Bureau ('CFPB')."). As Comcast points out, the FTC continues to take the position stated in the commentary. *See* Def.'s Reply 7 n.6 (citing an FTC consumer report entitled "Forty Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report and Summary of Interpretations," *available at* https://www.ftc.gov/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations). And as best as the Court has been able to determine, the CFPB has not taken a contrary position. In the absence of such refutation, and given the lack of a consent requirement in the statute itself, the reasoning and force of *Newlin* and *Washington* is not diminished here. As *Newlin* noted, a contrary conclusion would permit parties "to contract away rights conferred by the statute after a consumer has initiated a business transaction." 2014 WL 1207513, at *3.

(7th Cir. 2012) (on a motion under Rule 12(b)(6) a court may consider documents which are referenced in the complaint or are central to a plaintiff's claim).

Based upon the allegations set forth in the Complaint, the Court concludes that Comcast had a permissible purpose under 15 U.S.C. § 1681b(a)(3)(F)(ii), and Santangelo fails to state a claim under 15 U.S.C. § 1681(b)(f). Given the nature of the allegations and the early stage of this litigation, however, Count I is dismissed without prejudice, and Santangelo's request to file an amended complaint is granted.

### 2. Count II (State Law Claims)

Comcast also moves to dismiss Santangelo's claims for breach of contract and unjust enrichment. But before considering the merits of the claims, "[t]he federal courts are under an independent obligation to examine their own jurisdiction[.]" *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

Santangelo's Complaint invokes the Court's supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. *See* Compl. ¶ 2. Where no federal claims remain, a district court generally will relinquish supplemental jurisdiction as to the remaining state law claims. *See Miller Aviation v. Milwaukee Cnty. Bd. of Supervisors*, 273 F.3d 722, 732 (7th Cir. 2001). "[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). Having dismissed the federal claim under FCRA (albeit, without prejudice), the Court declines to exercise supplemental jurisdiction over Santangelo's claims for breach of contract and unjust enrichment pursuant to state law. *See* 28 U.S.C. § 1367(c)(3); *see also Isquith by Isquith v. Caremark Int'l, Inc.*, 136 F.3d 531, 532 (7th Cir. 1998) (dismissing class action claims under federal securities law and relinquishing

jurisdiction over remaining state law claims under 28 U.S.C. § 1367(c)(3)).  Accordingly, the state law claims also are dismissed without prejudice.

### IV. Conclusion

Defendant's motion to dismiss [14] is granted in part.  The motion to dismiss Count I is granted without prejudice.  Furthermore, in light of the foregoing, the Court *sua sponte* declines to exercise supplemental jurisdiction over the state law claims at this time, and those claims also are dismissed without prejudice.  Plaintiff's request for leave to amend the complaint is granted, and he is provided fourteen days from the entry of this order to file an amended complaint not inconsistent with this order.


**SO ORDERED**                                **ENTER: 5/28/15**

                                              _____
                                              **JOHN Z. LEE**
                                              **United States District Judge**