# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| KEITH SANTANGELO, | ) | |
| | ) | |
| Plaintiff, | ) | 15-cv-0293 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| COMCAST CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

After the Court dismissed Keith Santangelo's original complaint against Comcast Corporation without prejudice, Santangelo filed an amended complaint, again on behalf of himself and a putative class. According to the amended complaint, Santangelo contacted Comcast to set up internet service and paid a $50 deposit in exchange for Comcast's promise not to pull his credit report. Comcast then pulled his credit report anyway, an action Santangelo claims violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*, as well as Illinois statutory and common law. He also alleges that Comcast has done the same thing to many other consumers.

Comcast moves to dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Santangelo lacks Article III standing to bring an FCRA claim and also that he has failed to state any claim. For the reasons provided below, the Court denies Comcast's motion.

# I. Factual and Procedural Background

Santangelo alleges in his amended complaint that he contacted Comcast through the company's online customer service "Chat" function in December 2014 and requested internet service for his new apartment. Am. Compl. ¶ 14. During the chat session, a Comcast representative asked Santangelo for permission to run a credit inquiry. *Id.* ¶ 15. Santangelo asked if any option was available to avoid the credit inquiry. *Id.* ¶ 16. The Comcast representative told him that the company would forgo the inquiry if he paid a $50 deposit. *Id.*

The option to pay a $50 deposit in order to avoid a credit inquiry was an explicit part of Comcast's official Risk Management Policy and was set forth on the company's pubic website. *Id.* ¶¶ 10–11. The policy also required a $50 deposit from any prospective customer who agreed to a credit inquiry but whose credit score proved to be unsatisfactory. *Id.* ¶ 12. According to Santangelo, the deposit policy "reflects Comcast's calculated business decision and belief that the collection of a $50 deposit is sufficient to cover the risk presented by a person with bad credit and is sufficient to cover the risk presented by a person who refuses a credit pull." *Id.* ¶ 13.

Santangelo opted to pay the $50 deposit in lieu of a credit inquiry. *Id.* ¶ 17. To facilitate payment of his deposit, the Comcast representative created a web portal through which Santangelo provided his credit card information. *Id.* ¶ 18. Comcast then charged his credit card $50. *Id.* ¶ 19. Nevertheless, Comcast, without

Santangelo's authorization, pulled his credit report via a "hard inquiry" that same day. *Id.* ¶ 21. This credit inquiry depleted Santangelo's credit score. *Id.*

According to Santangelo, Comcast has done the same thing to many consumers. *Id.* ¶ 2 (citing Comcast help forum topic threads). He contends that Comcast's practice harmed him and the other members of the putative class by obtaining their personal and private financial information without justification and by taking $50 from each putative class member in exchange for a promise it didn't keep. *Id.* ¶ 32.

Comcast moved to dismiss the Santangelo's original complaint on the basis that Santangelo lacked standing to bring an FCRA claim and on the basis that his allegations did not state a claim. The Court rejected Comcast's standing argument but agreed that Santangelo had not stated an FCRA claim, noting that the complaint included no allegations about the Risk Management Policy that Santangelo had relied upon in his brief. *Santangelo v. Comcast Corp.*, No. 15-CV-0293, 2015 WL 3421156, at *2–*5 (N.D. Ill. May 28, 2015). The Court then declined to exercise supplemental jurisdiction over his state law claims. *Id.* at *5.

Santangelo has since filed an amended complaint that includes the allegations summarized above about Comcast's deposit policy. Comcast now moves to dismiss the amended complaint.

## II. Analysis

### A. FCRA Claim

FCRA prohibits the obtaining of a "consumer report," commonly known as a credit report, except for purposes authorized by that statute. 15 U.S.C. § 1681b(f). The statute lists specific permissible purposes, such as "in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit." *Id.* §1681b(a)(3)(A). The statute also allows reports to be obtained for any other "legitimate business need . . . in connection with a business transaction that is initiated by the consumer," §1681b(a)(3)(F)(i). These limitations are intended to produce a "balance between consumer privacy and the needs of a modern, credit-driven economy." *Stergiopoulos & Ivelisse Castro v. First Midwest Bancorp, Inc.*, 427 F.3d 1043, 1045–46 (7th Cir. 2005).

Santangelo contends that Comcast did not have a permissible purpose for obtaining his credit report after he paid the $50 deposit in exchange for the company's promise not to check his credit.[1] If he is correct and the company's violation was "willful," he would be entitled to recover attorney's fees and either "actual damages" or statutory damages between $100 and $1000. *See* 15 U.S.C.

---

[1] Santangelo also alleges that Comcast, because it lacked a permissible purpose to obtain his credit report, must have done so under "false pretenses." Am. Compl. ¶ 43. But even assuming, as other courts have, that "false pretenses" and "without a permissible purpose" are equivalent, *see Pappas v. City of Calumet City*, 9 F. Supp. 2d 943, 949 (N.D. Ill. 1998) (*citing Zamora v. Valley Fed. Sav. & Loan Assoc.*, 811 F.2d 1368, 1370 (10th Cir. 1987), the "false pretenses" provisions are inapplicable to this case. One provision applies only when the defendant is a "natural person," *i.e.*, not a corporation, *see* 15 U.S.C. § 1681n(a)(1)(B), another provides for damages only to reporting agencies (not to consumers), *see* 15 U.S.C. § 1681n(b), and the last creates only criminal liability, *see id.* § 1681q.

§ 1681n(a)(1). If the company's violation was merely negligent, Santangelo would be permitted to recover only attorney's fees and "actual damages." *See* 15 U.S.C.A. § 1681o(a)(1).

### 1. Standing

Comcast first argues that Santangelo lacks standing to bring his FCRA claim. To establish standing under Article III, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

According to Comcast, Santangelo has not alleged an injury-in-fact that is fairly traceable to the FCRA violation he claims. Mem. Supp. at 4–7. Santangelo responds that he has sustained three injuries-in-fact: the loss of the $50 he paid as a deposit, the violation of his legal right not to have his credit report pulled without a permissible purpose, and the resulting depletion of his credit score. Resp. Br. at 2–4.

The Court concluded in the order dismissing Santangelo's original complaint that Comcast's retention of his $50 deposit was sufficient to satisfy the injury-in-fact requirement. *See Santangelo v. Comcast Corp.*, No. 15-CV-0293, 2015 WL 3421156, at *2 (N.D. Ill. May 28, 2015). Comcast asks the Court to reconsider that

conclusion, arguing that the company's possession of the $50 is not fairly traceable to the claimed violation of the FCRA. Mem. Supp. at 4–5.

Comcast is correct that the actual act that constitutes the alleged FCRA violation—Comcast's execution of a credit pull—did not cause Santangelo to give Comcast $50. After all, he had given Comcast the $50 willingly before the credit inquiry was made. On the other hand, it was the very fact that Comcast received the $50 from Santangelo *before* it performed the credit check that made it illegal. (Santangelo's theory, remember, is that Comcast lacked a permissible purpose to make the credit inquiry after receiving his $50.) And once Comcast checked Santangelo's credit, it should have refunded the deposit immediately, rather than keeping it. Comcast's receipt and withholding of the $50, therefore, is inextricable from the FCRA violation and can be said to be fairly traceable to the FCRA violation. And as the Court explained in the previous order, "even if the $50.00 deposit were fully refundable, Santangelo still has standing based on the lost time-value of the money." *Santangelo*, No. 15-CV-0293, 2015 WL 3421156, at *3 (citing *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 457 (7th Cir. 2010) ("Every day that a sum of money is wrongfully withheld, its rightful owner loses the time-value of the money.").[2]

Deposit aside, the Court concludes that Santangelo also has sufficiently alleged an injury-in-fact by alleging that Comcast obtained his credit report without a permissible purpose in violation of the FCRA. Comcast contends otherwise,

---

[2] In its reply brief, Comcast states that it has refunded the $50 plus interest to Plaintiff on March 21, 2015. But this was months after the credit check was performed.

arguing that a bare violation of the FCRA—one that does not inflict "actual damages"—is merely an "injury in law" rather than an injury-in-fact. Mem. Supp. at 5–7. But this argument has no support in this Circuit, where it is clear that a plaintiff can sufficiently allege an injury-in-fact without alleging actual damages. *See Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014) (explaining that "the separate issue of whether plaintiffs have suffered financial harm" must not be confused "with Article III's injury-in-fact requirement for purposes of constitutional standing to bring suit in the first place"); *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 808 (7th Cir. 2013) ("Injury-in-fact for standing purposes is not the same thing as the ultimate measure of recovery.")

Because the FCRA grants consumers a legally protected interest in limiting access to their credit reports and provides redress for violations, the Court concludes that Santangelo's allegations about Comcast's interference with that legally protected interest are sufficient to establish Article III standing. Although the Supreme Court is considering the scope of Congress's ability to decide what constitutes injury-in-fact in an FCRA case, *see Spokeo, Inc. v. Robins*, 135 S.Ct. 1892 (Mem) (2015) (granting certiorari), this Court remains obliged to follow the law as it stands now. And, currently, Congress—though it "'may not lower the threshold for standing below the minimum requirements imposed by the Constitution'"—"does have the power to 'enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the

statute.'" *Sterk*, 770 F.3d at 623 (quoting *Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289, 294 (7th Cir. 2000).

Additionally, even if the Supreme Court were to conclude in *Spokeo* that a bare violation of the FCRA does not constitute an injury-in-fact, Santangelo also alleges that the FCRA violation in this case depleted his credit score. In response, Comcast contends that a reduced credit score, without resulting damages, does not constitute an injury for standing purposes, Mem. Supp. at 5, but the cases upon which it relies address the statutory requirement of "actual damages" under 15 U.S.C.A. § 1681o(a)(1), rather than Article III standing. *See Novak v. Experian Info. Sols., Inc.*, 782 F. Supp. 2d 617, 623 (N.D. Ill. 2011); *Renninger v. ChexSystems*, No. 98 C 669, 1998 WL 295497, at *6 (N.D. Ill. May 22, 1998); *Young v. Harbor Mortor Works, Inc.*, No. 2:07CV0031JVB, 2009 WL 187793, at *5 (N.D. Ind. Jan. 27, 2009).

In short, the Court agrees with Santangelo that a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing. Credit scores are of great importance in our economy, and a depleted credit score could affect a consumer in numerous ways, inflicting harm that often may be difficult to prove or quantify. Congress has the power to discourage the needless depletion of consumers' credit scores even when the depleted score cannot be neatly tied to a financial harm. While discovery may well show that Santangelo did not suffer any actual damages as a result of his lower credit score, at this preliminary stage, his allegations are sufficient to establish Article III injury-in-fact.

## 2. Sufficiency of Santangelo's allegations

Comcast next argues that Santangelo's allegations do not state an FCRA claim. Mem. Supp. at 7–10. To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the sufficiency of a complaint, the Court must view it in the light most favorable to the plaintiff, accept all well-pleaded facts as true, and give the plaintiff the benefit of all reasonable inferences. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). In addition to the complaint itself, the Court may consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

In dismissing Santangelo's original complaint, the Court concluded that he had not sufficiently alleged that Comcast lacked a permissible purpose for pulling his credit report. *See Santangelo v. Comcast Corp.*, No. 15-CV-0293, 2015 WL 3421156, at *4–*5 (N.D. Ill. May 28, 2015). To support his original allegations, Santangelo had argued that Comcast's agreement not to pull his credit report made such a request legally impermissible and thus illegitimate, but this argument conflated his contract claim with whether Comcast had a legitimate business need under the FCRA. *Id.* Santangelo also argued that Comcast's own policies revealed that it did not have a legitimate business need for his credit report after receiving

his $50 deposit, but he had not included any allegations about Comcast's policies in his complaint. *Id.* at *5.

In his amended complaint, Santangelo does allege that Comcast's deposit policies demonstrate its lack of a legitimate need to run credit checks with respect to consumers who paid a $50 deposit. According the amended complaint, Comcast's established policy is to forgo a credit check in exchange for a $50 deposit. The company also has a policy of accepting a $50 deposit from consumers who opt for a credit check but prove to have poor credit. Santangelo compares this situation to that of a car dealer who accepts a cash payment for the full purchase price of a car. The FTC has explained that the car dealer in that hypothetical does not have a legitimate need to obtain the purchaser's credit report. *See Kaiser, FTC Informal Staff Opinion Letter* (July 16, 1998), *available at* https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-kaiser-07-16-98 (accessed Jan. 3, 2016). Similarly, a landlord does not have a legitimate need to obtain a tenant's credit report if the tenant is entitled to a lease renewal without regard to creditworthiness. *See, e.g., Ali v. Vikar Mgmt. Ltd.*, 994 F. Supp. 492, 499 (S.D.N.Y. 1998).

In response, Comcast first argues that it had a legitimate business need to establish Santangelo's creditworthiness despite his deposit because—unlike in the car dealer example—his $50 deposit would cover less than two months of service in a long-term contract. Mem. Supp. at 8–9.[3] But the Company's assertions about the

---

[3]     Although Comcast's seems to be arguing that it was extending credit to Santangelo in the form of internet service, the company does not invoke 15 U.S.C.A. § 1681b(a)(3)(A),

cost of Santangelo's service and the existence of a long-term contract do not appear in Santangelo's complaint or attached documents and thus cannot be the basis for granting a motion under Rule 12(b)(6). *See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1430 (7th Cir. 1996) ("[I]f the district court considers matters outside the pleadings in connection with a motion to dismiss, it must treat the motion as one for summary judgment. Failure to treat such a motion as one for summary judgment and provide the litigants with notice and an opportunity to respond can constitute reversible error." (citations omitted)). And even assuming that Santangelo's deposit did not negate all financial risk to Comcast, he contends that, under company policy, his creditworthiness was irrelevant to Comcast's determination of his eligibility for service once the deposit was collected, much like the tenants in *Ali*.

If Santangelo is correct that Comcast did not obtain his credit report to assess his creditworthiness, the company would still have been justified in obtaining the report if it had some other "legitimate business need." Comcast contends that it had such a need: to verify Santangelo's identity. But the Court has no basis at this stage for accepting this assertion as true, and a defendant may not defeat an FCRA claim simply by offering what may be a *post hoc* rationale for having obtained a credit report. Moreover, the company itself highlights the current lack of clarity about why it obtained the report by arguing at another point that

which explicitly provides that a credit report may be obtained when an "extension of credit" is involved. A debt incurred in exchange for a service is a form of credit. *See* 15 U.S.C.A. §§ 1681a(r)(5), 1691a(d). Comcast instead relies entirely on § 1681b(a)(3)(F)(ii), the residual clause.

Santangelo's allegations "suggest that [Comcast] obtained his report unintentionally." Reply. Br. at 9.

The bottom line is that Santangelo's allegations about Comcast's deposit policy—when combined with the reasonable inference that Comcast instituted this policy because it had no need to check the credit of consumers who paid deposits—remedied the deficiencies in his original complaint. As the Court concluded in the previous order, Comcast's mere violation of its alleged agreement not to pull Santangelo's credit report does not support an FCRA claim. *Santangelo*, No. 15-CV-0293, 2015 WL 3421156, at *4. But the possibility that the company itself believed that its customers' creditworthiness was irrelevant if they paid a deposit is enough at the pleading stage. Discovery may show that Comcast did have a legitimate business need for Santangelo's credit report even after his deposit was paid, but the Court cannot say so at this point and must grant all reasonable inferences to Santangelo.

Comcast's final argument for dismissing Santangelo's FCRA claim is that he neither explicitly alleges that the company's actions were "willful," which is necessary to trigger statutory damages, *see* 15 U.S.C. § 1681n(a)(1)(A), nor identifies any "actual damages" that he could recover if Comcast acted only negligently, *see id.* § 1681o(a)(1). Mem. Supp. at 9–10. But even assuming that Santangelo's $50 deposit and depleted credit score do not constitute "actual damages," he has nevertheless stated a claim because he has sufficiently alleged that Comcast acted willfully. Although he does not use the word "willful" in his

complaint, he alleges that the company obtained his credit report despite that it "knew that it did not have a legitimate business need." Am. Compl. ¶41. He also alleges that "Comcast is engaged in this practice on a widespread basis." *Id.* ¶ 2. These allegations imply recklessness at the very least, and reckless conduct qualifies as willful conduct under the FCRA. *See Murray v. New Cingular Wireless Services, Inc.*, 523 F.3d 719, 725–26 (7th Cir. 2008) ("[S]tatutory damages are available only for willful violations of the Act, and the Supreme Court held in *Safeco Insurance Co. v. Burr*, 551 U.S. 47 (2007), that this means recklessness—something more than negligence but less than knowledge of the law's requirements.")

## B. State Law Claims

### 1. Standing

Comcast argues for the first time in its Reply Brief that Santangelo no longer has standing to bring any of his state law claims. Reply Br. at 9. In support, the company has attached an affidavit and billing records purporting to show that, since this lawsuit was filed, Santangelo has received a credit in the amount of his $50 deposit, plus interest in the amount of $.10. Comcast contends that this refund means that Santangelo's injury for the reported breach of contract cannot be redressed by a favorable judicial decision as is required for standing.

Normally, an argument raised for the first time in a reply brief is deemed forfeited, *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009), but courts have an independent responsibility to inquire into whether they have jurisdiction to decide a claim, *Olson v. Bemis Co.*, 800 F.3d 296, 300 (7th Cir. 2015). In fulfilling that

obligation, the Court may consider evidence outside the pleadings, *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007), meaning that the Court may consider the evidence Comcast has attached to its brief for purposes of deciding this jurisdictional question.

When a plaintiff had standing to bring a claim at the time the claim was filed, and the defendant subsequently takes some action to compensate the plaintiff for the alleged wrong, the question becomes whether the case is moot rather than whether the plaintiff has standing. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). The distinction is important because a defendant who argues that it has taken an action that moots the case bears the burden of establishing mootness, whereas standing is the plaintiff's burden to establish. *Id.*

Establishing mootness is not easy. Just recently, the Supreme Court reiterated that a "case becomes moot . . . only when it is impossible for a court to grant any effectual relief whatever to the prevailing party. As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Campbell-Ewald Co. v. Gomez*, No. 14-857, 2016 WL 228345, at *5 (Jan. 20, 2016) (internal quotation marks and citations omitted).

Despite the refund of his deposit, Santangelo still has an interest in the outcome of his state law claims. Although the refund of his deposit with interest may mean that there is little or no additional money he can recover, the Court cannot conclude that it is "impossible . . . to grant any effectual relief" to

Santangelo. For example, Santangelo may ultimately be able to prove damages resulting from his depleted credit score (whether in the form of a higher interest rate on credit, a missed opportunity, or even reputational harm). Additionally, under the Illinois Consumer Fraud and Deceptive Practices Act, Santangelo is not just seeking compensatory damages but is also seeking punitive damages and injunctive relief. Because Comcast has not made an offer of judgment that would have entirely satisfied Santangelo's state law claims, the claims are not moot. *See id.* at *7. *See also* Scott v. Westlake Servs. LLC, 740 F.3d 1124, 1126 (7th Cir. 2014) ("[I]f the defendant offers to pay only what it thinks might be due, the offer does not render the plaintiff's case moot.")

### 2. Sufficiency of Allegations

#### a. Breach of Contract

The elements of a breach of contract claim in Illinois are (1) a valid contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) resulting damages. *Razor Capital v. Antaal*, 972 N.E.2d 1238, 1246 (Ill. App. 2012). Santangelo alleges that Comcast offered to forgo a credit check in exchange for a $50 deposit and that he accepted the offer and paid the deposit. Comcast then breached, he asserts, by running a credit check. Santangelo says he was damaged by the loss of the use of his $50 and the reduction of his credit score.

According to Comcast, however, Santangelo's contract claim must be dismissed based on the existence of a subsequent written contract, Mem. Supp. 10–12, a copy of which the company has attached to its memorandum in support of its

motion to dismiss, *id.* at Ex. 1-A.. That contract purports to "replace any and all prior written or verbal agreements" about "the subject matter of this Agreement," and the contract authorizes Comcast "to make inquiries and to receive information about your credit experience from others." Santangelo responds in part with several arguments that this document has no bearing on his contract claim, including that the breach he alleges took place before he could possibly have entered into the written contract, even assuming that he did eventually enter into it. His more important argument right now, however, is that the Court may not consider the written contract at this stage of the case.

A motion to dismiss under Rule 12(b)(6) must be decided based on the complaint, "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky*, 675 F.3d at 745 n.1 (7th Cir. 2012). The contract submitted by Comcast falls into none of these categories. If the Court were to consider the contract, the company's motion to dismiss would necessarily be converted into a motion for summary judgment, and Santangelo would need to be given the discovery and opportunity to respond. *See Travel All Over the World*, 73 F.3d at 1430.

Comcast also argues that Santangelo does not allege any compensable damages, explaining that his complaint does not address "whether Comcast has or will refund interest on his deposit"[4] and that he "does not allege that any harm

---

[4]     Comcast correctly does not suggest that the Court should consider the affidavit and billing records that it submitted in support of its argument  for dismissal under Rule 12(b)(1). As explained, the Court may consider evidence outside the pleadings when applying Rule 12(b)(1) but not Rule 12(b)(6).

resulted" from his decreased credit score. Mem. Supp. at 12. But Comcast offers no authority for the proposition that Santangelo needed to include allegations relating to Comcast's intent to refund his deposit with interest, and the Court is aware of none. Additionally, the Court declines to decide at the pleading stage that a reduced credit score without identifiable financial consequences could never entitle a plaintiff to damages.

### b. Unjust Enrichment

Under Illinois law, "recovery for unjust enrichment is unavailable where the conduct at issue is the subject of an express contract between the plaintiff and defendant." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013). But a plaintiff can bring an unjust enrichment claim in the alternative to a breach of contract claim. *Id.*; Fed. R. Civ. P. 8(d)(2). Santangelo brings his unjust enrichment claim in the alternative, meaning that, if the Court concludes that no contract governed whether Comcast could obtain his credit report, Santangelo may still be able to force Comcast to disgorge any ill-gotten gains.

Comcast argues that this claim, like Santangelo's contract claim, should be dismissed based on the existence of the written contract they have attached to their motion to dismiss. Mem. Supp. at 12–13. But, as explained above, the Court is not permitted to consider that contract in deciding whether to dismiss a claim under Rule 12(b)(6). *See Travel All Over the World, Inc*, 73 F.3d at 1430.

Comcast also makes the related argument that the claim should be dismissed because both parties agree that an express contract governs and only disagree about

*which* contract governs. Presumably, however, Comcast does not mean to concede that it had a valid contract with Santangelo not to run a credit check until the written contract went into effect. In any event, if the company does seek to make that concession, it will need to do so in its answer to the complaint.

Finally, Comcast argues that Santangelo has not stated an unjust enrichment claim because he has not alleged that the company "intended to retain his deposit." Mem. Supp. at 13. "To state a claim for unjust enrichment, the plaintiff must allege that the defendant retained a benefit to the plaintiff's detriment, and that the retention of that benefit violates fundamental principles of justice, equity, and good conscience." *Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 622 (N.D. Ill. 2008) (citing *HPI Health Care Serv., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)).

Comcast is right that Santangelo did not allege anything about the company's intent, but he did allege that the company has in fact "retained the $50 deposit," Am. Compl. at 65, which is sufficient. Comcast points out that this allegation is no longer true because the deposit has been refunded, but the evidence of the refund (like the written contract) cannot be considered by the Court in applying Rule 12(b)(6) because it is a matter outside the pleadings. *See Travel All Over the World, Inc*, 73 F.3d at 1430.

### c. Consumer Fraud and Deceptive Business Practices Act

Illinois's Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505 *et seq.*, "is a regulatory and remedial statute intended to protect consumers,

borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). "It is to be liberally construed to effectuate its purpose." *Id.* "The elements of a claim under the Act are: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce." *Id.* Additionally, the plaintiff must have suffered "actual damage." 815 ILCS 505/10a. To determine whether conduct is "unfair" under the Act, Illinois courts ask "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002).

Santangelo alleges that Comcast engaged in unfair and deceptive business practices by promising to forgo a credit check in exchange for a $50 deposit and then performing the credit check anyway. Am. Compl. ¶ 46. He says that the company intended for him and others to rely on the deception, as "evidenced by the fact that Comcast facilitated the deposits of $50 by providing a web portal to process the deposit in real time." *Id.* ¶ 48. He also alleges that Comcast's "conduct offends public policy because it is akin to a widespread fraud, violates federal law, harms consumers, and harm's consumer trust in the communications industry and credit reporting industry." *Id.* ¶ 51. As in each of his counts, he incorporates his earlier allegations about the specifics of his dealings with Comcast. *Id.* ¶ 44.

Comcast first argues that Santangelo's allegations fall short of stating a claim under the Act because of the overlap between those allegations and the allegations that support his breach of contract claim. The Illinois Supreme Court has made clear that a "breach of contractual promise, without more, is not actionable under the Consumer Fraud Act." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005). The Seventh Circuit has elaborated that even a "widespread" breaching of contracts is not enough to state a claim under the Act if it is just "a simple breach of contract multiplied over a prospective plaintiff class." *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 400 (7th Cir. 2011). "[A]ffirmative acts of misrepresentation," however, can be enough to push a contract claim into the ambit of the Act. *Id.*

Santangelo responds that his allegations in support of his claim under the Act are not merely that Comcast breached its contract. Resp. Br. at 14–15. Rather, he alleges that the company made affirmative false representations (both on its website and while communicating directly with consumers), that it did so on a widespread basis, and that it induced consumers to pay the $50 deposit right away through an online payment portal. The Court agrees that these allegations describe something beyond a simple breach of contract. *See Rumford v. Countrywide Funding Corp.*, 678 N.E.2d 369, 373 (Ill. App. 1997) ("[W]e find that plaintiff's consumer fraud claim was not based on a simple breach of contract but on an allegation that defendant was engaged in a pattern of misrepresenting to customers

that additional charges would not be assessed at the time their mortgages were released.")

Comcast's second argument is that Santangelo has failed to state a claim under the Act by "fail[ing] to plead any facts whatsoever that would support a finding that Comcast intended to deviate from" its written policy of accepting a deposit in lieu of a credit check. Mem. Supp. at 15. The company says that Santangelo thus has not met the pleading standards of Rule 8(a) let alone the heightened pleading standard set out in Rule 9(b) for fraud claims. *Id.*

The Seventh Circuit has stated that "[c]laims for violation of the Consumer Fraud Act are subject to the same heightened pleading standards as other fraud claims; as such, they must satisfy the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure." *Greenberger*, 631 F.3d at 399 (7th Cir. 2011). The Seventh Circuit has also made clear that a "cause of action for unfair practices under the Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008).

Santangelo alleges that Comcast's actions were both deceptive (fraudulent) and unfair, complicating the question of which pleading standard applies. But the Court concludes that resolving that question is unnecessary because Santangelo's allegations are sufficiently specific under either standard. The heightened pleading standard of Rule 9(b) requires that the complaint include "the who, what, when, where, and how" of the alleged fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627

(7th Cir. 1990). Santangelo has included this information. And Comcast's concern that he has not sufficiently alleged their intent to deviate from their written policy must be rejected because, under Rule 9(b), "intent . . . may be alleged generally."

### III. Conclusion

For the reasons given above, the Court denies Comcast's motion to dismiss.


**SO ORDERED**                    **ENTER:  2/8/16**

_____
**JOHN Z. LEE**
**United States District Judge**