# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| KEITH SANTANGELO, | ) | |
| | ) | |
| Santangelo, | ) | 15-cv-0293 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| COMCAST CORPORATION, | ) | |
| | ) | |
| Comcast. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Keith Santangelo ("Santangelo") has filed this suit on behalf of himself and four putative classes, alleging that Defendant Comcast Corporation ("Comcast") conducted an unauthorized credit check that caused a drop in his credit score, in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and the Illinois Consumer Fraud Act ("ICFA"), 815 Ill. Comp. Stat. 505/2. Santangelo also has asserted state law claims for breach of contract and unjust enrichment. Comcast has moved to strike Santangelo's class allegations. For the reasons provided herein, the Court grants Comcast's motion insofar as it seeks to require Santangelo to amend his proposed classes to exclude individuals who did not opt out of the arbitration provision contained in Comcast's subscriber agreement.

## I. Background

Santangelo alleges that, in December 2014, he contacted Comcast via Comcast's online customer service "chat" function in order to establish internet

service in his apartment. Am. Compl. ¶ 8, ECF No. 37. During Santangelo's online chat session, Comcast's representative informed Santangelo of the need to run a credit report to establish internet service. *Id.* ¶ 9. Comcast's representative further informed Santangelo that, in lieu of the credit report, Santangelo could pay a $50.00 deposit. *Id.* ¶¶ 10–11. Santangelo chose the latter option and paid the $50.00 to obtain internet service. *Id.* ¶ 12. However, despite Santangelo paying the deposit, Comcast ran a credit report anyway. *Id.* ¶ 14.[1]

Comcast's subscriber agreement with Santangelo contained an arbitration provision, set forth in § 13. Def.'s Mot., Ex. C, Subscriber Agreement at 14–16, ECF No. 175-3. Within thirty days of signing up for Comcast's cable service, Santangelo opted out of the arbitration provision, as § 13(c) of the agreement permitted him to do. *See* Def.'s Mem. Law Supp. Renewed Mot. Partially Strike Pl.'s Class Allegations ("Def.'s Mot.") at 6–7, ECF No. 175; Def.'s Mot., Ex. B, Santangelo Dep. at 142:20–143:19 (stating that he opted out of the section labeled "Binding Arbitration," at the bottom of page 15 of the subscriber agreement), ECF No. 175-2; Pl.'s Resp. at 1–2, ECF No. 187. The arbitration provision requires those subscribers who do not opt out within the thirty-day period to raise any disputes related to the agreement in an arbitration setting, rather than the courts. Section 13(f)(2) of the provision also allows only individual claims and precludes claims that

---

[1] Santangelo claims that he and other members of the putative classes have been harmed by Comcast's action in that Comcast obtained their personal and private financial information without authorization and received $50.00 from each putative class member in exchange for its promise not to request such records (which it subsequently ignored). *Id.* ¶ 21. Santangelo also asserts that his credit score dropped as a result of the impermissible running of his credit report. *Id.* ¶ 37.

are asserted on a class-wide or collective basis. Subscriber Agreement at 14–16; Def.'s Mot., Ex. D, Salcedo Decl. ¶ 10, 13, ECF No. 175-4. Furthermore, § 13(f)(1) of the arbitration provision requires a subscriber to bring any claim within one year of "the date of occurrence of the event or facts giving rise to a dispute."[2] Subscriber Agreement at 15.

In his amended complaint, Santangelo proposes four classes, including an FCRA Class, IFCA Class, Breach of Contract Class, and an Unjust Enrichment Class, each composed of:

> All natural persons residing in the United States or its Territories, . . . who were the subject of a consumer report obtained by Comcast during the ordering process, . . . after Comcast collected the credit inquiry deposit from the consumer . . . .[3]

Am. Compl. ¶ 29. Each of Santangelo's proposed classes therefore includes subscribers who are bound by the arbitration provision, including the one-year limitations period, (assuming it is enforceable). *See id.* Indeed, the parties do not

---

[2] In stating in its motion that Santangelo "exercised his contractual right to opt out of arbitration and complied with his contractual one-year limitations period," Comcast suggests that Santangelo was subject to § 13(f)(1) of the subscriber agreement despite having opted out of § 13 of the agreement via § 13(c). *See* Def.'s Mot at 1–3; *see also id.* at 6 ("In addition to the arbitration provision discussed above, the Subscriber Agreement also contains a contractual limitations period of one year."); Subscriber Agreement at 14–15. However, in its reply, Comcast confirms that § 13(f)(1) is "part of the arbitration agreement from which Plaintiff chose to opt out." Def.'s Reply at 10. Additionally, Santangelo, in his response brief, states that the limitations provision is "in" the arbitration provision from which he opted out. Pl.'s Resp. at 2, 3, 10–12. Accordingly, the parties are in agreement that the one-year limitations provision (§ 13(f)(1)) is part of the arbitration provision (§ 13). This construction is consistent with the plain language and structure of § 13. *See* Subscriber Agreement at 14–15. As such, Santangelo, by opting out of the arbitration provision, is not required to arbitrate this dispute and is not subject to the one-year limitations period.

[3] Each proposed class also contains a time-period provision during which the putative class members claims must have arisen, which varies based on the class. Am. Compl. ¶ 29.

dispute that only a small percentage of Santangelo's putative class members opted out of Comcast's arbitration provision, Def.'s Mot. at 4; Pl.'s Resp. at 4.

Comcast has moved to strike Santangelo's class allegations or to require Santangelo to amend the proposed class definitions to exclude subscribers who did not opt out of Comcast's arbitration provision.

## **II. Legal Standard**

Class certification is governed by Federal Rule of Civil Procedure 23. Under Rule 23(a), class certification is permitted only when: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802, 811 (7th Cir. 2012).

In addition, when, as is likely here,[4] class certification is sought pursuant to Rule 23(b)(3), "proponents of the class must also show: (1) that the questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members; and (2) that a class action is superior to other available methods of resolving the controversy." *Messner*, 669 F.3d at 811 (citing *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010)).

Of course, it is now beyond dispute that "Rule 23 does not set forth a mere pleading standard." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014)

---

[4] Although Santangelo has not yet brought a motion to certify his proposed classes, his amended complaint indicates that he is likely to seek certification pursuant to Rule 23(b)(3). *See* Am. Compl. ¶ 34.

4

(internal quotation marks omitted) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Rather, "[p]laintiffs bear the burden of showing that a proposed class satisfies the Rule 23 requirements." *Messner*, 669 F.3d at 811. As such, when reviewing whether class certification is appropriate, a court "may not simply assume the truth of the matters as asserted by the plaintiff[s]," but instead must receive evidence and resolve factual disputes as necessary to decide whether certification is appropriate. *Id.* (citing *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)). "[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart*, 564 U.S. at 350–51 (internal quotation marks omitted).

As for timing, a court is to determine whether to certify an action as a class action "[a]t an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). Because the parties often need discovery to develop the factual record from which a court can conduct a rigorous analysis, it is generally more prudent—as a matter of efficient case management—for a court to refrain from conducting this inquiry until the party seeking certification files a class certification motion (with the necessary factual contentions) after some discovery, and the opposing party files a response. It is for this reason that motions to strike class allegations have been disfavored. *See De Falco v. Vibram USA, Inc.,* 2013 WL 1122825, at *9 (N.D. Ill. Mar. 18, 2013); *Chenensky v. N.Y. Life. Ins. Co.,* 2011 WL 1795305, at *1 (S.D.N.Y. Apr. 27, 2011).

That said, Rule 23(d)(1)(D) permits a court to "issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of

5

absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D).[5]  And there are circumstances when a motion to strike can provide a valuable vehicle to narrow the disputed issues in the case. *See Kasalo v. Harris & Harris, Ltd.,* 656 F.3d 557, 563 (7th Cir. 2011) (holding that a court "need not delay a ruling on certification if it thinks that additional discovery would not be useful in resolving the class determination"); *see also Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 297 (N.D. Ill. 2014) (requiring plaintiff to amend proposed class definition). This is just such an instance, because the factual record is sufficient to decide the motion, and the Court's determination will significantly impact the scope of the remaining discovery in the case. *See Kasalo*, 656 F.3d at 563.

### III. Analysis

Comcast has moved to strike Santangelo's class allegations, arguing that Santangelo's proposed classes cannot satisfy Rule 23(a) because Santangelo is neither typical of the classes he proposes to represent, Fed. R. Civ. P. 23(a)(3), nor adequate to protect the interests of the classes, Fed. R. Civ. P. 23(a)(4). Santangelo disagrees.

---

[5] Although some courts have read Rule 23(d)(1)(D) to allow for the removal of class allegations from a complaint only after class certification has been decided, *see, e.g., Boatwright v. Walgreen Co.*, 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2011), the language of Rule 23(d) is not so limited, and the Advisory Committee clearly intended the rule to confer on courts broad discretion in managing class actions. *See* Advisory Committee Notes to Subdivision (d) ("Subdivision (d) is concerned with the fair and efficient conduct of the action . . . . The Court should consider how the proceedings are to be arranged in sequence, and what measures should be taken to simplify the proof and argument. See subdivision (d)(1). The orders resulting from this consideration, like the others referred to in subdivision (d), may be combined with a pretrial order under Rule 16, and are subject to modification as the case proceeds.").

6

## A. Rule 23(a)(3): Typicality

Typicality under Rule 23(a) requires that the named plaintiffs' claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members" and "are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). The typicality requirement is thus satisfied when "the named representatives' claims have the same essential characteristics as the claims of the class at large." *Retired Chi. Police Ass'n*, 7 F.3d at 597. "Typicality under Rule 23(a)(3) should be determined with reference to the [defendant's] actions, not with respect to particularized defenses it might have against certain class members." *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996); *see also CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724–25 (7th Cir. 2011) (quoting *Wagner*, 95 F.3d at 534).

Comcast argues that Santangelo's claims are not typical of the classes he proposes to represent because, unlike most putative class members, Santangelo opted out of Comcast's arbitration provision. Def.'s Mot. at 10–11. Comcast contends, in essence, that it has defenses against the "overwhelming majority" of the proposed classes that Comcast cannot assert against Santangelo himself. *Id.* at 9–11. However, as Santangelo correctly notes, the impact that potential defenses may have on the appropriateness of class certification is to be addressed not within the context of Rule 23(a)'s typicality requirement (which focuses on Comcast's conduct), but rather its adequacy requirement, which focuses on the relationship between Santangelo and the putative class members. *See CE Design*, 637 F.3d at

7

724–25; *see also, e.g., Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 2017 WL 4339788, at *5 (N.D. Ill. Sept. 29, 2017); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 225 (N.D. Ill. 2016). Therefore, the Court will address Comcast's defense arguments within the context of Rule 23(a)'s adequacy requirement.

**B.     Rule 23(a)(4): Adequacy**

The adequacy requirement under Rule 23(a)(4) comprises two parts: "'the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest' of the class members." *Retired Chi. Police Ass'n*, 7 F.3d at 598 (quoting *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986)). "[A] class is not . . . adequately represented if class members have antagonistic or conflicting claims." *Id.* (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)).

With regard to adequacy, Comcast replicates its arguments against typicality. In short, Comcast asserts that a plaintiff not bound by Comcast's arbitration provision cannot adequately represent classes that include a substantial number of individuals who are so bound. *See* Def.'s Mot. at 11.

In response, Santangelo argues that the conflict of interest upon which Comcast relies is merely "speculative" and, therefore, insufficient to destroy adequacy. Pl.'s Resp. at 6–7. According to Santangelo, he has the same interest in obtaining damages as every other class member, and he has an interest in achieving class certification because, as class representative, he would stand to receive an

8

incentive award. *Id.* at 7–8. In any event, Santangelo argues, the arbitration provision, including its one-year contractual limitations sub-provision, is unenforceable and, thus, should preclude a finding of inadequacy. Pl.'s Resp. at 8–15.

Having considered the record, the Court agrees that Santangelo cannot satisfy Rule 23(a)'s adequacy requirement because he cannot adequately represent the interests of the putative class members who are potentially bound by Comcast's arbitration provision. Santangelo first argues that the arbitration provision is void *ab initio.* But numerous cases have upheld similar arbitration provisions. *See, e.g., Bayer v. Comcast Cable Commc'ns, LLC,* 2013 WL 1849519 (N.D. Ill. May 1, 2013); *O'Quinn v. Comcast Corp.*, 2010 WL 4932665 (N.D Ill. Nov. 29, 2010); *Jordan v. Comcast Cable Commc'ns Mgmt., LLC*, 2016 WL 452145 (N.D. Ga. Feb. 4, 2016). As to the one-year limitations sub-provision, some courts have found it enforceable, while others have not. *Compare, e.g., Losapio v. Comcast Corp.*, 2011 WL 1497652, at \*6 (N.D. Ga. Apr. 19, 2011) (finding one-year limitations provision enforceable), *with Anderson v. Comcast Corp.*, 500 F.3d 66, 75–77 (1st Cir. 2007) (finding it unenforceable). As such, the Court finds that the enforceability of the arbitration provision, including its limitations sub-provision, is sufficiently "arguable" to challenge the ability of Santangelo, who is not bound by the arbitration provision, to adequately represent the interests of the individuals in the four classes who are. *See CE Design*, 637 F.3d at 726 (quoting *J.H. Cohn & Co. v. Am. Appraisal Assoc., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980) (holding that the "presence of even an

9

arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class" may make the named plaintiff an inadequate representative of the class).

Indeed, by virtue of the fact that he successfully opted out of the arbitration provision, Santangelo would be unable to assert, in any credible fashion, a number of arguments that would potentially undermine the provision's enforceability. For example, Santangelo would be hard pressed to argue that subscribers somehow felt compelled to accept the arbitration provision or that it was not sufficiently noticeable to warrant enforcement. In fact, Comcast would cite Santangelo as a counter-example against such arguments. *See Tan v. Grubhub, Inc.*, 2016 WL 4721439, at *3 (N.D. Cal. July 19, 2016) (finding plaintiff inadequate to argue against enforcement of arbitration and class action waiver provisions where plaintiff had opted out of provisions); *Quinlan v. Macy's Corp. Servs., Inc.*, 2013 WL 11091572, at *3 (C.D. Cal. Aug. 22, 2013) (same, but analyzed under typicality requirement).

To be clear, this does not mean that the mere presence of an arbitration provision will destroy adequacy (and, thereby, preclude certification) in all circumstances. Indeed, it is possible that another class representative—who had not opted out of the arbitration provision—could persuade the Court that the provision should be disregarded, or at least discounted, for class certification purposes based upon a number of reasons, including those noted above. But this simply highlights Santangelo's inability to adequately represent the interests of the proposed classes.

The differences between Santangelo and members of the putative classes have other serious implications. Although the individuals, whose claims are arguably subject to the arbitration provision, face significantly higher barriers to recovery as compared to Santangelo, the strength of Santangelo's own claims will not be impacted by a judicial determination as to the provision's enforceability. As a result, Santangelo will have a structural incentive to trade upon the rights of those absent class members to his own advantage in any potential settlement between himself and Comcast. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 595 (1997) (reversing class certification and settlement agreement where there was "no structural assurance of fair and adequate representation for the diverse groups and individuals affected"); *Georgine v. Amchem Prod., Inc.*, 83 F.3d 610, 631 (3d Cir. 1996) (reversing class certification where class representatives were inadequate "[a]bsent structural protections to assure that differently situated plaintiffs negotiate[d] for their own unique interests"); *see also In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 343–44 (N.D. Ill. 2010) ("Before a court can approve a class settlement, it must assure itself that 'the class has been adequately represented during the settlement talks . . . .'") (quoting *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 n.21 (7th Cir. 1979)).

For his part, Santangelo insists that he will go to the mat for all putative class members, including those who are subject to the arbitration provision. He claims that he will do so because he has an incentive to get a large class certified so that he can receive an incentive award as a class representative. Pl.'s Resp. at 7–8.

11

This may be so (although the Court cannot help but note that Santangelo's lawyers also will benefit from a larger class in the event of a settlement or recovery, more so perhaps than Santangelo himself).  But this incentive does not negate the structural inadequacies noted above.  For example, given that incentive awards in similar types of cases rarely exceed fifteen or twenty thousand dollars, Comcast might consider it worthwhile (if a class is certified or as part of a class-wide settlement) to offer Santangelo a premium in excess of that amount in exchange for an agreement to abandon his challenge to the enforceability of the arbitration provision and its one-year limitations period, even though it may be in the best interests of a substantial number of class members to pursue such a challenge.  On the other hand, the putative class members might be fine with such a bargain, but due to the differences outlined above, Santangelo is not in a position to make that decision for them.

For these reasons, the Court concludes that Santangelo will be inadequate to represent the interests of the putative classes as currently defined in Santangelo's amended complaint, and Comcast's motion to strike class allegations is granted.  To the extent that Santangelo wishes to pursue this action on a class-wide basis, he must amend the proposed class definitions in a manner consistent with this order before filing a motion for class certification.

## IV. Conclusion

Comcast's motion to strike [174] Santangelo's class allegations is granted. Status hearing remains set for December 7, 2017, at 9:00 a.m.

**IT IS SO ORDERED.**  ENTERED  12/6/17

_____
**John Z. Lee
United States District Judge**